**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maribel Vargas,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-18-04712-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Maribel Vargas's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant SSA Commissioner's Opposition (Doc. 18, Def. Br.), and Plaintiff's Reply (Doc. 19, Reply). The Court has reviewed the briefs and the Administrative Record (Doc. 14, R.) and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 8–18) as upheld by the Appeals Council (R. at 1–7).

**I. BACKGROUND**

Plaintiff filed her Application on March 2, 2015 for a period of disability beginning on February 12, 2015. (R. at 11.) Her claim was denied initially on April 25, 2015, and upon reconsideration on September 11, 2015. (*Id.*) Plaintiff then testified at a video hearing held before the ALJ on July 24, 2017. (*Id.*) On January 12, 2018, the ALJ denied Plaintiff's

Application. (R. at 8–18.) This decision became final on October 18, 2018, when the Appeals Council denied Plaintiff's request for review. (R. at 1–7.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degeneration of intervertebral disc of the lumbar region, lumbar spinal stenosis, lumbar radiculopathy, lumbosacral spondylosis, and obesity. (R. at 13.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 18.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. at 13.) The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with some limitations. (R. at 14.) Specifically, Plaintiff "would be limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling and climbing on ramps and stairs." (*Id*.) Further, Plaintiff "must avoid occupations that require climbing on ladders, ropes and scaffolds" and "should avoid all exposure to dangerous machinery and unprotected heights." (*Id*.) Consequently, the ALJ concluded that Plaintiff "is unable to perform any past relevant work" but can perform some work in the national economy. (R. at 17.)

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a

whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404 and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff raises two arguments for the Court's consideration: (1) the ALJ erred by

rejecting Plaintiff's symptom testimony without providing clear and convincing reasons supported by substantial evidence; and (2) the ALJ erred in determining Plaintiff's RFC. (Pl. Br. at 7–18.)

### A. The ALJ erred by rejecting Plaintiff's symptom testimony.

At the video hearing before the ALJ, Plaintiff testified that her back pain is constantly at a nine or nine and a half out of ten. (R. at 56.) She testified that she cannot stand or sit for long and spends much of her time lying down in bed. (R. at 51.) She testified that she sits upright for only about 20–25 percent of each day and drives approximately twice per day, three times per week. (R. at 51, 53.) She also testified that she uses a cane and walker to help her walk. (R. at 55.)

The ALJ discounted Plaintiff's symptom testimony for two reasons. First, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" and that the record contained no opinions by physicians that Plaintiff was precluded from all work activity. (R. at 16.) Second, the ALJ found that Plaintiff's course of treatment was "conservative." (*Id.*)

An ALJ performs a two-step analysis to evaluate the credibility of a claimant's testimony regarding subjective pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, if the claimant presents such evidence and if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. An ALJ's "vague allegation" that a claimant's symptom testimony is inconsistent with the medical

record does not meet the clear and convincing standard. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102–03 (9th Cir. 2014). Similarly, an ALJ cannot satisfy the clear and convincing standard based solely upon "a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ found that Plaintiff met the first step of the credibility analysis: "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms." (R. at 16.) She did not find that Plaintiff was a malingerer. (*Id.*) Therefore, to reject Plaintiff's pain testimony, the ALJ was required to offer clear and convincing reasons for doing so and substantial evidence supporting her determination. *Id.* at 680. Neither of the ALJ's two reasons for rejecting Plaintiff's symptom testimony meet this standard.

### 1. Testimony "inconsistent" with medical record

The ALJ's first stated reason for discounting Plaintiff's testimony was because the testimony was "not entirely consistent" with the medical record. (R. at 16.) A review of the ALJ's analysis, however, shows that this conclusion was more properly characterized as a *lack* of medical evidence supporting Plaintiff's claims, rather than inconsistent evidence. (R. at 15–16.) The lack of medical evidence conclusion is supported by substantial evidence for the reasons discussed below. It does not meet the clear and convincing standard, however, because a lack of medical evidence alone is an insufficient basis for rejecting Plaintiff's symptom testimony. *See Burch*, 400 F.3d at 680 (finding that a "lack of medical evidence cannot form the sole basis for discounting pain testimony").

The ALJ found that a January 2016 MRI of Plaintiff's lumbar spine revealed only mild narrowing, and March 2016 x-rays of Plaintiff's lumbar spine revealed vertebrae slippage, "but no significant degeneration and no complications with implants nor instrumentation." (R. at 15–16.) The ALJ also found that Plaintiff's physical exams on March 3, 2016 and December 15, 2016 revealed "minimal objective findings, including tenderness in the lumbar area, which was noted to be out of proportion to the pressure applied to the area." (R. at 16.) The ALJ also noted that although Plaintiff began

complaining of neck pain and cervical radiculopathy symptoms, a February 2016 MRI of Plaintiff's cervical spine "revealed only a mild disc bulge" and a same-day physical exam "revealed only minimal findings of paracervical tenderness and muscle rigidity." (*Id.*) Finally, the ALJ found that "no physician on file has opined of limitations that would preclude [Plaintiff from] all work activity." (*Id.*)

Plaintiff argues that the ALJ relied on boilerplate language and made no effort "to connect the discussion of the medical evidence to a finding that any specific part of the symptom testimony lacked credibility." (Pl. Br. at 9–10.) Plaintiff also argues that the ALJ's analysis of Plaintiff's reported symptoms was incorrect because the law does not require a claimant's medical records to be entirely consistent with the reported severity of symptoms. (Pl. Br. at 9.) Plaintiff's arguments on this point lack merit. The ALJ provided a detailed review of Plaintiff's symptom testimony and identified specific examples of medical evidence that do not support Plaintiff's allegations of pain or limitations.

Plaintiff also argues that the absence of formal assessments by Plaintiff's physicians regarding her limitations was an improper reason for the ALJ to discredit Plaintiff's symptom testimony because "[t]he absence of evidence is not evidence." (Pl. Br. at 14.) Though Plaintiff is correct that the ALJ cannot rely solely on a lack of objective medical evidence to discredit Plaintiff's symptom testimony, it is one factor the ALJ can consider. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). Moreover, the ALJ did not summarily dismiss Plaintiff's complaints, but instead considered them among the medical evidence of record. Though the evidence may support an interpretation more favorable to Plaintiff, the ALJ's interpretation was rational, and the Court upholds the decision where the evidence is subject to more than one rational interpretation. *Burch*, 400 F.3d at 680–81. Therefore, the ALJ's conclusion that Plaintiff's testimony is "inconsistent" with (or, more accurately, unsupported by) the medical record is therefore supported by substantial evidence. *See Kallenbach v. Berryhill*, 766 Fed.Appx. 518, 521 (9th Cir. 2019). Because the proffered justification alone is not a sufficient basis for rejecting Plaintiff's symptom testimony, however, *Burch*, 400 F.3d at 680, it was not a clear and convincing justification

for doing so.

## 2. Conservative treatment

The ALJ's second reason for rejecting Plaintiff's symptom testimony—that it was inconsistent with her conservative course of treatment—is a clear and convincing reason for doing so but is not supported by substantial evidence in this case. Evidence of conservative treatment is a valid reason to discredit a claimant's symptom testimony unless the claimant provides a "good reason" for not seeking alternative treatment. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).[1]

Plaintiff provides good reasons for pursuing conservative treatment.[2] First, Plaintiff testified, and medical records support, that she cannot tolerate pain medications due to the gastric sleeve surgery she underwent in 2013.[3] (R. at 51–52.) Plaintiff's well-recorded intolerance for pain medication is acknowledged by both the Commissioner and the ALJ

---

[1] The policy behind this rule is that conservative treatment "can undermine allegations of debilitating pain." *Carmickle*, 553 F.3d at 1162. When a claimant "complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. In the case of a complaint of pain, such failure may be probative of credibility, because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (internal citation omitted).

[2] Plaintiff disputes the ALJ's characterization of Plaintiff's treatment as conservative. (Pl. Br. at 12–13.) Specifically, Plaintiff points out that "the ALJ herself noted that [Plaintiff] had a spinal fusion, a laminectomy, and bariatric surgery in attempts to relieve her back pain, none of which can reasonably be considered 'conservative measures.'" (Pl. Br. at 12.) As the Commissioner points out, the ALJ more accurately characterized Plaintiff's treatment *after* her surgeries and the filing of her Application as conservative, because this was the "relevant period" in which Plaintiff claimed that she was disabled. (Def. Br. at 14, R. at 15.) This treatment consisted of facet injections, a TENS unit, and a back brace. (Def. Br. at 14, R. at 15–16). Courts in this Circuit have similarly characterized relatively more minor treatments obtained after more extensive procedures including surgeries, but during the claimed disability period, as conservative. *See, e.g.*, *Real v. Berryhill*, 2018 WL 4907612, at *10 (E.D. Cal. Oct. 9, 2018); *Higinio v. Colvin*, No. EDCV 12-1820 AJW, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014). Therefore, the ALJ's characterization of Plaintiff's treatment as conservative was proper.

[3] Relatedly, Plaintiff argues that although she was unable to take narcotics, the fact that her physicians recommended it supports her argument that her treatment was not conservative and that her disability is real. (Pl. Br. at 12.) This argument lacks merit because an ALJ could reasonably find that Plaintiff's treatment record as a whole was conservative despite the fact that Plaintiff was prescribed narcotics. *See Real*, 2018 WL 4907612, at *10.

- 7 -

(Def. Br. at 14–15, R. at 15) and was an improper basis for discrediting Plaintiff's symptom testimony. *See Carmickle*, 533 F.3d at 1162.

Plaintiff also testified that pain management was ineffective at treating her symptoms. (R. at 53.) In her decision, the ALJ took issue with the fact that Plaintiff did not see a pain specialist despite being referred to one.[4] (R. at 16.) However, medical records indicate that pain management, namely pain medication and epidural injections, was ineffective. For example, Dr. Evangelista's records indicate that Plaintiff received two epidural injections in her lower back in October 2016 and reportedly did not experience relief. (R. at 556.) Dr. Evangelista also recorded in November and December 2016 that Plaintiff was "being followed" by Dr. Castillo for pain management. (R. at 556, 562.)

Finally, the ALJ acknowledged that Plaintiff's "pain was unrelieved by conservative measures," which according to the ALJ included epidural shots, medication management, physical therapy, facet injections, a TENS unit, and a back brace. (R. at 15–16.) Since conservative treatment was ineffective at treating Plaintiff's symptoms, and more aggressive treatment, like surgery, was not recommended,[5] it is unclear what types of treatment the ALJ believed Plaintiff should pursue. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (finding that claimant's favorable response to conservative treatment undermined his reports about the disabling nature of his pain).

In sum, the ALJ erred in discounting Plaintiff's symptom testimony. Neither of the ALJ's two justifications for doing so met *both* requirements of being clear and convincing reasons and also supported by substantial evidence. Discounting Plaintiff's symptom

---

[4] The ALJ cited to a medical record from Dr. Shawn F. Hermenau, who concluded in March 2016 that surgery would not "meet [Plaintiff's] expectations or improve her functional ability" and recommended that Plaintiff see "a pain specialist to improve her visual analog scale score and hopefully improve her overall functional ability." (R. at 411.) The ALJ also cited to a medical record from Dr. Adelbert Evangelista who noted in January 2016 that she referred Plaintiff to Dr. Shanti for pain management. (R. at 526.)

[5] Plaintiff underwent surgery in 2012 and 2013 which appears from Dr. Christopher Yeung's records to have provided Plaintiff with some, but not complete, relief. (R. at 323.) In December and March 2016, Dr. Hermenau noted that he believed surgery would not meet Plaintiff's expectations or improve her pain. (R. at 405, 411.)

testimony on these grounds was therefore improper.

### B. The ALJ erred in determining Plaintiff's RFC.

Plaintiff argues that the ALJ erred in determining Plaintiff's RFC because she did not articulate a basis for it. (Pl. Br. at 17.) In concluding that Plaintiff could perform sedentary work with some limitations, the ALJ provided a comprehensive assessment of Plaintiff's medical records but gave little weight to Plaintiff's symptom testimony and the opinions of state agency medical consultants, Charles Fina, M.D. and Melvin Roberts, M.D. (R. at 14–16.)

When calculating a claimant's RFC, the ALJ must account for all relevant medical evidence and descriptions of claimant's limitations. 20 C.F.R. § 416.945(a)(3); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). This Court will affirm an ALJ's RFC determination where the ALJ has applied the proper legal standard and supported her decision with substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

With regard to Plaintiff's symptom testimony, although the ALJ articulated one valid reason for discounting the testimony, it was insufficient on its own, and the ALJ's second reason was not supported by substantial evidence. When determining Plaintiff's RFC, the ALJ explained that Plaintiff's symptom testimony "ha[s] been found to affect [her] ability to work only to the extent [the testimony] can reasonably be accepted as consistent with the objective medical and other evidence." (R. at 16.) The ALJ reverted to using boilerplate language and failed to point to precisely what portions of Plaintiff's testimony she considered in formulating Plaintiff's RFC. This was error.

With regard to the state agency consultants, the ALJ gave their opinions little weight because they "were not privy to all of the medical records" and appeared to have not taken into "consideration all of the limitations the claimant would experience as a result of her impairments." (*Id*.) Plaintiff points out that the ALJ rejected the only medical opinion evidence in the record and then provided her own opinion about Plaintiff's work capacities without explaining how she arrived at her conclusion. (Pl. Br. 16–17.) The Court

- 9 -

acknowledges that the ALJ gave "little weight" to the consultants' opinions rather than outright "rejecting" them. However, because the ALJ did not articulate what other evidence she considered, it is unclear how she arrived at her conclusion that Plaintiff could perform sedentary work with some limitations.

### C. The credit-as-true rule does not apply.

Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in a remand of Plaintiff's case for payment of benefits rather than for further proceedings. (Pl. Br. at 18.) The credit-as-true rule only applies in cases where three elements are present. *Treichler*, 775 F.3d at 1099–1102. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical evidence. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Further proceedings are considered useful when there is conflicting evidence and ambiguities that must be resolved. *Id.* Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Even if these requirements are met, "the Court still retains the flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Guillen v. Colvin*, 2014 WL 4656422, at *10 (C.D. Cal. Sept. 17, 2014) (citing *Garrison*, 759 F.3d at 995).

Here, the ordinary remand rule applies. Although the ALJ improperly rejected Plaintiff's symptom testimony because of her conservative treatment, the ALJ articulated several aspects of Plaintiff's testimony and medical record that raise serious doubt as to whether Plaintiff is disabled.[6] Therefore, further proceedings are appropriate, in which the ALJ must adequately explain what evidence she considered in discounting Plaintiff's

---

[6] In addition to the evidence the ALJ cited, Dr. Hermenau opined that Plaintiff's pain is not "related to the structure or any abnormalities of the spinal column itself" and physical therapy would help with desensitization and core muscle strengthening. (R. at 411.)

symptom testimony and formulating Plaintiff's RFC.

**IT IS THEREFORE ORDERED** reversing the January 12, 2018 decision of the Administrative Law Judge (R. at 8–22).

**IT IS FURTHER ORDERED** remanding this matter for further consideration consistent with this Order, which will include reassessing the credibility of Plaintiff's symptom testimony and adjusting the residual functional capacity presented to a vocational expert as necessary.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this matter.

Dated this 6th day of December, 2019.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge